IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ANTWAN D. McKNIGHT, #1764431, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 3:15-CV-1647-K-BK |
| | § | |
| MTC, et al., | § | |
| Defendants. | § | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to 28 U.S.C. § 636(b) and *Special Order* 3, this case was automatically referred to the United States Magistrate Judge. Plaintiff, a state inmate, filed a *pro se* complaint under 42 U.S.C. § 1983. The Court granted Plaintiff's motion to proceed *in forma pauperis*, but did not issue process pending preliminary screening of the complaint and answers to the Court's questionnaires. Doc. 5 at 1. For the reasons that follow, this case should be summarily dismissed.

**I. BACKGROUND**

Plaintiff brings suit against Management and Training Corporation (MTC), Sergeant Swinford, Major Tunaitis, Deputy Warden Wixtorik,[1] and Regional Director B. Parker for alleged violations of Plaintiff's constitutional and statutory rights while imprisoned in a Texas Department of Criminal Justice facility. Doc. 1. More specifically, Plaintiff asserts that on March 3, 2015, Defendants violated his rights to due process and religious freedom, as well as and the protections afforded under the Religious Land Use and Institutionalized Persons Act (RLUIPA), by confining him in administrative segregation and taking disciplinary action against him for refusing to be confined in the same cell as an "active homosexual" inmate. Doc. 1 at 3-

---

[1] The correct spelling of some of the Defendants' names is not clear from the complaint.

4; Doc. 7 at 4-12. Plaintiff asserts, *inter alia*, that he has "a religious obligation to honor God," and that Defendants compelled him "to violate [his] human conscience by forcing [him] into a cell with an active homosexual or receive a major [disciplinary] case and therefore placing a substantial burden on [his] civil rights/human rights." Doc. 1 at 4-5; Doc. 7 at 4, 7, 8, 9, 12.

At a disciplinary hearing held on March 12, 2015, Plaintiff received the following sanctions for refusing to obey an order: (1) one day of segregation, (2) 30 days of recreation restrictions, (3) 30 days of commissary restrictions, and (4) a decrease in his Line Class from a S4-Trusty to a Line 2 designation. Doc. 7 at 2. He asserts that the disciplinary infraction has delayed his parole consideration by one year and may have a long term effect on his "discharge date." Doc. 7 at 2. However, by this action, Plaintiff seeks only money damages for mental anguish and "the taking away of his parole eligibility date." Doc. 1 at 4; Doc. 7 at 5, 7, 10-12.

## II. ANALYSIS

Because Plaintiff is proceeding *in forma pauperis*, the complaint is subject to screening under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b). Those statutes provide for *sua sponte* dismissal of a complaint if the Court finds that it (1) is frivolous or malicious, (2) fails to state a claim upon which relief may be granted, or (3) seeks monetary relief against a defendant who is immune from such relief. A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327.

The Court liberally construes Plaintiff's filings with all possible deference due a *pro se* litigant. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (*pro se* pleadings are "to be liberally construed," and "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers."); *Cf.* FED. R. CIV. P. 8(e) ("Pleadings must

be construed so as to do justice"). Even under this most liberal construction, however, Plaintiff's complaint should be summarily dismissed as frivolous.

### A. Section 1983 Claims

Plaintiff claims violations of his First and Fourteenth Amendment rights, pursuant to 42 U.S.C. § 1983, by MTC, a private prison-management corporation, and its employees. *See Rosborough v. Mgmt. & Training Corp.*, 350 F.3d 459 (5th Cir. 2003) (private prison and its employees act under color of state law, and thus may be sued under section 1983 for constitutional violations because confinement of wrongdoers, though sometimes delegated to private entities, is a fundamentally governmental function). Plaintiff claims no physical injury, however, and the recovery of compensatory damages for emotional or mental injuries allegedly suffered is precluded. Under 42 U.S.C. § 1997e(e), a prisoner is prohibited from filing a civil action in federal court "for mental or emotional injury suffered while in custody without a prior showing of physical injury." *See also Mayfield v. Texas Dep't Of Criminal Justice*, 529 F.3d 599, 606 (5th Cir. 2008) (dismissing compensatory-damages request under section 1997e(e) because the plaintiff had not alleged any physical injury stemming from his free exercise of religion claims and he sought only compensatory damages); *Stauffer v. Gearhart*, 741 F.3d 574, 583 (5th Cir. 2014) (same as to claims of First and Fourteenth Amendment violations).

Moreover, while section 1997e(e) does not bar Plaintiff's request for punitive damages, *see Hutchins v. McDaniels*, 512 F.3d 193, 198 (5th Cir. 2007), "punitive damages may be awarded only when the defendant's conduct "is 'motivated by evil intent' or demonstrates 'reckless or callous indifference' to a person's constitutional rights." *Williams v. Kaufman County*, 352 F.3d 994, 1015 (5th Cir. 2003) (citations omitted). Plaintiff has alleged neither, nor does he posit any facts in support of his claims from which such an inference may be drawn.

3

In any event, Plaintiff's claims also fail on the merits.

### 1. Due Process Claims

Plaintiff contends that his constitutional right to due process was violated by the wrongful conduct of a disciplinary proceeding and the resulting sanctions. However, he does not have a liberty interest sufficient to invoke due process concerns. The Due Process Clause protects against deprivations of life, liberty, or property, *see* U.S. Const. Amend. XIV, § 1, and "those who seek to invoke its procedural protection must establish that one of these interests is at stake." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). The "Due Process Clause does not protect every change in the conditions of confinement which has a substantial adverse effect upon a prisoner." *Madison v. Parker*, 104 F.3d 765, 767 (5th Cir. 1997).

The punishment imposed following the disciplinary proceeding in the instant case—one day in segregation, 30 days of recreation and commissary restrictions, and a decrease in line class from a S4-Trusty to a Line 2 designation—does not rise to the level of a liberty interest and are "merely changes in the conditions of [Plaintiff's] confinement and do not implicate due process concerns." *Madison*, 104 F.3d at 767-768. Placement in a segregation cell (especially for only one day) does not implicate a protected liberty interest. *See Luken v. Scott,* 71 F.3d 192, 193 (5th Cir. 1995) ("administrative segregation, without more, does not constitute a deprivation of a constitutionally cognizable interest") (*citing Sandin v. Conner*, 515 U.S. 472, 486 (1995)). Nor does the temporary loss of recreation and commissary privileges involve a protected liberty interest. *Madison*, 104 F.3d at 768 (concluding that 30-day commissary and cell restrictions do not implicate due process concerns"); *Taylor v. Swift*, 2015 WL 5834057, at *1 (5th Cir. Oct. 7, 2015) (per curiam) (finding that loss of 20 days of recreation and commissary privileges does not result in a deprivation of a liberty interest). Moreover, Plaintiff does not have a liberty interest in

his custodial classification or in his good-time earning status.  *See Malchi v. Thaler*, 211 F.3d 953, 959 (5th Cir. 2000) (effect of a change in a prisoner's good-time earning status on the timing of inmate's release on mandatory supervision was "too speculative to afford him a constitutionally cognizable claim to the 'right' to a particular time-earning status"); *see also Luken,* 71 F.3d at 193 ("The loss of the opportunity to earn good-time credits, which might lead to earlier parole, is a collateral consequence of [an inmate's] custodial status" and, thus, does "not create constitutionally protected liberty interests.").

Plaintiff also asserts that Defendant Deputy Warden Wixtorik confiscated a grievance that Plaintiff had filed against Wixtorik and responded to it "against his own judgment," in violation Plaintiff's due process rights "to a fair and impartial hearing [of his] complaint."  Doc. 1 at 5.  However, insofar as Plaintiff seeks to challenge the grievance procedure, his claim likewise has no merit.  Plaintiff does not have a constitutionally-protected "liberty interest in having . . . grievances resolved to his satisfaction."  *Geiger v. Jowers*, 404 F.3d 371, 373-374 (5th Cir. 2005) (quoting *Sandin*, 515 U.S. at 484) (a prisoner has a liberty interest only in "freedom[s] from restraint . . . impos[ing] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.").   Nor does Plaintiff "have a constitutional entitlement to an adequate grievance procedure."  *Hill v. Bowles*, No. 3:02-CV-2527-P, 2003 WL 21448045 *5 (N.D. Tex. June 18, 2003) (collecting out-of-circuit precedent), recommendation accepted, 2003 WL 21977138 (N.D. Tex. July 31, 2003).

Since Plaintiff relies on liberty interests that do not exist in the law, his claims of due process violations should be summarily dismissed.

### 2. First Amendment Claim

Plaintiff also asserts a violation of his right to freedom of religion, which the Court has liberally construed to raise a claim under the Free Exercise Clause of the First Amendment. *See* U.S. Const. Amend. I; *O'Lone v. Estate of Shabazz,* 482 U.S. 342, 348 (1987) (First Amendment's protection of the right to free exercise of religion extends to inmates). In *Turner v. Safley,* the Supreme Court held that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." 482 U.S. 78, 89 (1987) (setting out four-factor test for determining whether a prison regulation that infringes on an inmate's First Amendment rights is nonetheless reasonable and therefore constitutionally valid).

Plaintiff maintains Defendants forced him to violate his "religious freedom and obligation to" God by choosing between being confined with an active homosexual or receiving a major disciplinary case. Doc. 1 at 5; *see also* Doc. 7 at 4. However, Plaintiff does not complain that the placement of the homosexual inmate in his cell impinged in any way on his right to freely exercise his religion. Indeed, his pleadings are silent about any burden on his religious practice, and only mention generally his concerns for "human dignity" and "conscience" and "religious obligation to honor . . . God." Doc. 3 at 5; Doc. 7 at 4. Moreover, Plaintiff does not allege that his cell assignment was made solely to harass or cause him problems and, thus, was not reasonably related to a legitimate penological interest. *See Jehovah v. Clarke*, 798 F.3d 169, 181 (4th Cir. 2015) (inmate alleged a plausible First Amendment claim because he asserted cell assignments were "deliberately done ... to harass and cause conflict and problems for [him]" and in contravention of a housing policy). Indeed, Plaintiff conceded in response to the Court's questionnaire that he was moved to a different cell soon after he

complained, and that another inmate was assigned to his old cell with the same homosexual inmate within a relative short amount of time.  Doc. 7 at 8.  These facts are inconsistent with any suggestion that the complained of roommate assignment was to deliberately harass Plaintiff.  Further, Plaintiff has not alleged Defendants' deliberate indifference to his physical safety.

Moreover, Plaintiff's pleadings are totally silent about any prison policy or regulation relating to cell assignment that was not applied neutrally and, thus, impinged on his First Amendment right to free exercise.  See *Mayfield v. Texas Dep't Of Crim. Justice*, 529 F.3d 599, 609-610 (5th Cir. 2008) (remanding First Amendment claim to address the neutrality of TDCJ's policy allowing religious groups to assemble for religious services in the absence of an outside volunteer).  It is well-settled that prisoners do not have a constitutional right to choose their place of confinement, security classification, housing assignment, and cellmate.  *See, e.g.*, *Olim v. Wakinekona,* 461 U.S. 238, 245 (1983) (place of confinement); *Murray v. Bledsoe*, 650 F.3d 246, 247 (3d Cir. 2011) (per curiam) (cellmate); *Burger v. U.S. Bureau of Prisons,* 65 F.3d 48 (5th Cir. 1995) (prisoner classification).  Prison officials also retain broad discretion over the administration of prisons, including housing and cell assignments.  *Bell v. Wolfish,* 441 U.S. 520, 540 n. 23, 547 (1979)) ("Prison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.").

Based on the forgoing, the Court concludes that Plaintiff's allegations concerning the assignment of a homosexual cellmate lack any arguable basis under the Free Exercise Clause of the First Amendment.

**B. RLUIPA**

Lastly, Plaintiff generally asserts a violation of RLUIPA. Doc. 1 at 3. However, even assuming it applies to a private prison and its personnel because they are instrumentalities of the state, *see Knows His Gun v. Montana*, 866 F. Supp. 2d 1235, 1246 (D. Mont. 2012) (collecting cases applying RLUIPA to private prisons), Plaintiff is not entitled to monetary relief under RLUIPA. *See Sossamon v. Texas*, 563 U.S. 277, ---, 131 S.Ct. at 1655, 1663 (2011) (RLUIPA does not create a cause of action for damages against the State of "Texas and the Defendants in their official capacities."); *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 331 (5th Cir. 2009) (RLUIPA does not create a private right of action against the defendants in their individual capacities), *aff'd sub nom. Sossamon*, 563 U.S. 277; *see also Copeland v. Livingston*, 464 F. App'x 326, 330 (5th Cir. 2012) (restating district and appellate court holdings in *Sossamon*). That fact notwithstanding, Plaintiff's bare allegations fail to raise an arguable claim under RLUIPA as set out below.[2]

RLUIPA provides more stringent protection of prisoners' free exercise rights than does the First Amendment. Under RLUIPA, "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . unless the government demonstrates that imposition of the burden on that person—(1) is in furtherance of a compelling government interest; and (2) is the least restrictive means of furthering that compelling government interest." 42 U.S.C. § 2000cc-1(a). The inmate bears the initial burden of showing a substantial burden on his religious exercise. 42 U.S.C. § 2000cc–2(b). "RLUIPA protects 'any exercise of religion, whether or not compelled by, or central to, a system of religious belief,' § 2000cc–5(7)(A), but . . . a prisoner's request for an accommodation must be

---

[2] RLUIPA creates a private right of action for injunctive and declaratory relief. *Sossamon*, 560 F.3d at 326-327.

sincerely based on a religious belief and not some other motivation." *Holt v. Hobbs*, ––– U.S. –––, 135 S. Ct. 853, 862 (2015). The government in turn must establish that the burden is the least restrictive way to further a compelling governmental interest. 42 U.S.C. § 2000cc–2(b). "The least-restrictive-means standard is exceptionally demanding, and it requires the government to show that it lacks other means of achieving its desired goal without imposing a substantial burden on the exercise of religion by the objecting party." *Holt,* 135 S.Ct. at 864 (internal quotation marks and alterations omitted).

Here, Plaintiff has pled no facts tending to show that Defendants' refusal to accommodate his housing request "put a substantial pressure on him to modify his behavior and to violate his beliefs." *Jehovah*, 798 F.3d at 180-181 (quotations and quoted case omitted). Plaintiff relies instead on conclusory statements that sharing a cell with a homosexual inmate is against his conscience and "religious obligation to honor God." Doc. 1 at 4-5. However, he does not claim that sharing a cell with the homosexual inmate has put any pressure on him to change his religious conduct. *See Jehovah*, 798 F.3d at 180 (allegation that inmate was required to "share a cell or anything with persons who are anti-Christian and unbelievers" in contravention of his religious beliefs did not in and of itself demonstrate that inmate was pressured to change his religious conduct). Thus, Plaintiff's allegations suggest that he takes issue only with the *exposure* to a homosexual cellmate, and not with any *effect* it has on his religious activities. Indeed, his filings do not identify any religious exercise apart from mentioning very general tenets of his religion to "honor God" and maintain his "human dignity." *Compare Fountain v. Thaler*, --- F. App'x ---, No. 14-40644, 2015 WL 6445738, at *2 (5th Cir. Oct. 26, 2015) (holding the plaintiff had pleaded sufficient facts under RLUIPA because prison's

correspondence policy obstructed his opportunity to exercise and grow his religion through the mail when he could not attend church during administrative segregation).[3]

In addition, Plaintiff does not claim that the homosexual cellmate harassed him for his religious belief or that he attempted to obstruct Plaintiff from engaging in any religious practice. *See Jehovah*, 798 F.3d at 180 (holding inmate made a sufficient prima facie showing under RLUIPA because in addition to his general complaint, he also alleged that his religious practices were chilled by his cellmate's religiously motivated harassment).  Moreover, at least one district court has found that preference in housing based on differences in race or sexual orientation does not substantially burden an inmate's ability to practice his religion for purposes of RLUIPA.  *See Damron v. Jackson*, No. 2:09-CV-050, 2011 WL 4402767, at *8 (S.D. Ohio Sept. 21, 2011) (holding that inmate failed to make a *prima facie* showing under RLUIPA that being celled with non-whites or homosexuals was a substantial burden on his ability to practice his religion).  In *Damron*, the plaintiff's pleadings only briefly referred to the tenets of his religion, and merely "advocate[d] racial separation based upon biblical interpretation" and to protect members of the Christian Separatist Church from physical danger.  2011 WL 4402767 at *8.  In this case, in addition to the brief reference to his religious beliefs, the pleadings do not even rise to the level of those in *Damron*, because Plaintiff does not allege any fear of physical danger.  Doc. 1 at 4-5.

---

[3] Even given the "broad protection of religious exercise" required by RLUIPA, *see Holt*, 135 S. Ct. at 860, the complaint is wholly devoid of facts from which this Court can conclude that Plaintiff's beliefs constitute "religious exercise."  *Cf. Wagner v. Campuzano*, 562 F. App'x 255, 256 (5th Cir. 2014) (per curiam) (playing piano for religious services was religious exercise); *Chance v. Tex. Dep't of Crim. Justice*, 730 F.3d 404, 412 (5th Cir. 2013) (smoking a communal pipe was religious exercise); *Garner v. Kennedy*, 713 F.3d 237, 244 (5th Cir. 2013) (growing a beard was religious exercise).

10

Based on the above, the Court concludes that Plaintiff cannot make the initial showing that the assignment of a homosexual cellmate was a substantial burden on his religious exercise. Accordingly, his RLUIPA claim lacks an arguable basis in law and should be dismissed.

### III. LEAVE TO AMEND

Ordinarily, a *pro se p*laintiff should be granted leave to amend the complaint prior to dismissal. *See Brown v. Texas A&M Univ.*, 804 F.2d 327, 334 (5th Cir. 1986) ("Unless we have searched every nook and cranny of the record, like a hungry beggar searching a pantry for the last morsel of food, and have determined that 'even the most sympathetic reading of plaintiff's pleadings uncovers no theory and no facts that would subject the present defendants to liability,'" he must be permitted to amend his claim if he can do so.). Here, the Court has given Plaintiff's pleadings their most liberal construction. Additionally, the Court has given Plaintiff an opportunity to clarify and to state legally cognizable claims through a court questionnaire. Doc. 6; Doc. 7. *See Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir. 1986) (district court should be able to dismiss as frivolous a significant number of prisoner suits on the complaint alone or the complaint together with the *Watson* questionnaire). Nevertheless, as detailed herein, each of Plaintiff's claims lacks an arguable basis either in law or in fact. Under these circumstances, granting leave to amend would be futile and cause needless delay. *See Jacquez v. Procunier*, 801 F.2d 789, 792 (5th Cir. 1986) ("At some point a court must decide that a plaintiff has had fair opportunity to make his case; if, after that time, a cause of action has not been established, the court should finally dismiss the suit.").

### IV. CONCLUSION

For the foregoing reasons, it is recommended that this action be summarily **DISMISSED** with prejudice as frivolous. *See* 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b).

This dismissal will count as a "strike" or "prior occasion" within the meaning of 28 U.S.C. § 1915(g).[4]

SIGNED this November 9, 2015.

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND
NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of this report and recommendation will be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. See 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. See *Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

---

[4] 28 U.S.C. § 1915(g), commonly known as the "three-strikes" provision, provides: "[i]n no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section, if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury."